**NTN BEARING CORPORATION OF AMERICA, American NTN Bearing Manufacturing Corporation, and NTN Toyo Bearing Co., Ltd., Plaintiffs,**

v.

**UNITED STATES and the United States International Trade Commission, Defendants,**

and

**the Timken Company, Defendant–Intervenor.**

**Court No. 88–01–00053.**

United States Court of International Trade.

May 6, 1988.

Barnes, Richardson & Colburn, Robert E. Burke and Donald J. Unger, Chicago, Ill., for plaintiffs.

James A. Toupin, Asst. Gen. Counsel, and Phyllis N. Smithey, U.S. Intern. Trade Com'n, Washington, D.C., for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Washington, D.C., and John M. Breen, Sp. Counsel, Chicago, Ill. (Scott A. Scherff, of counsel), for defendant-intervenor.

## OPINION AND ORDER

TSOUCALAS, Judge:

This matter focuses on whether plaintiffs are required to file a second set of civil actions against the Department of Commerce, International Trade Administration (Commerce), and the International Trade Commission (ITC), as the result of the publication of an amended final dumping determination and order, where plaintiffs timely commenced an original set of actions after publication of the initial order.

On October 6, 1987, Commerce published an antidumping duty order covering certain tapered roller bearings. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 37352 (1987). The initial order was based on Commerce's final affirmative dumping determination, *Final Determination of Sales At Less Than Fair Value; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 30700 (August 17, 1987), and the affirmative final injury determination issued by the ITC. *Tapered Roller Bearings and Parts Thereof ... From Japan*, USITC Pub. 2020, Inv. No. 731–TA–343 (Final) (Sept.1987); 52 Fed.Reg. 36847 (Oct. 1, 1987). On November 3, 1987, plaintiffs commenced an action contesting Commerce's final determination of sales at less than fair value ("LTFV"), *NTN Bearing Corp. of America v. United States*, Court No. 87–11–01066, and also commenced an action contesting the final affirmative injury determination rendered by the ITC. *NTN Bearing Corp. of America v. United States*, Court No. 87–11–01067.

After NTN had commenced those actions, the government consented to correct clerical errors in the computation of the dumping margins, and on December 11, 1987, Commerce amended its final determination as well as the antidumping duty order, indicating lower dumping margins. *Amendment to Final Determination of Sales at Less Than Fair Value and Amendment to Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 47955 (Dec. 17, 1987). The ITC took no action in response to Commerce's amended final dumping determination.

Thereafter, on December 30, 1987, plaintiffs moved in Court No. 87–11–01066, NTN's initial action contesting Commerce's dumping determination, for leave to file a supplemental complaint raising issues rele-

vant to the amended determination. On January 19, 1988, this Court granted NTN's motion. However, the government opposed plaintiffs' motion, arguing that the court lacked jurisdiction to entertain the supplemental complaint because that action had not been commenced within 30 days after publication of the amended antidumping duty order, relying on *Freeport Minerals v. United States,* 3 Fed.Cir. (T) 114, 758 F.2d 629 (Fed.Cir.1985). As stated in the government's opposition to the filing of the supplemental complaint:

> Based upon the holding in *Freeport,* it follows that when Commerce published the amended final determination and amended antidumping duty order on December 17, 1987, that publication served as a publication for purposes of 19 U.S.C. § 1516a(a)(2)(A)(i)(II) which authorizes the commencement of an action in this Court within 30 days after the date of publication in the Federal Register of "an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B)." Since 19 U.S.C. § 1516a(a)(2)(A)(i)(II) provides for the filing of an action *after,* and not before the publication of the contested determination, it further follows that plaintiffs must challenge Commerce's amended determination in a new action instituted after the publication of the amended determination. No case law dealing with supplemental pleadings generally can eliminate the statutory requirements set forth in 19 U.S.C. § 1516a.
>
> Under the circumstances, Plaintiffs' motion for leave to file a supplemental complaint should be denied since the filing of the supplemental complaint would be futile in this case. The merits of the amended determination must be reviewed in a new action instituted after the publication of the amendments. In such an action, of course, Plaintiffs are not limited to challenging the amendment but are free to challenge all pertinent underlying factual findings and legal issues.

Court No. 87–11–01066, *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Leave to File a Supplemental Complaint* at 5–7 (footnotes omitted).

Plaintiffs also moved for leave to file a supplemental complaint in Civil Action No. 87–11–01067 in order to set forth plaintiffs' claim in reference to the effect of Commerce's amended final dumping determination on the validity of the ITC's injury determination. That motion, not objected to by the government, was similarly granted. Notwithstanding the filing of that motion, and concurrent therewith, plaintiffs commenced new actions, within 30 days after publication of the revised anti-dumping duty order, contesting both Commerce's dumping determination, as amended, Court No. 88–01–00052, and the Commission's injury determination. Court No. 88–01–00053 (the instant action). These latter two actions are essentially duplicative of the original actions incorporating the supplemental complaints. Plaintiffs have commenced these actions as a precautionary measure to protect the court's jurisdiction to hear the challenges to the determinations underlying the antidumping duty order, in the event that the government's position in Court No. 87–11–01066 may be subsequently adopted.

Defendants have moved to dismiss this action, addressed to the ITC's injury determination, for lack of jurisdiction, since it was filed more than 30 days after the Commission issued its findings, and no revised decision was issued as a result of Commerce's amended determination. Plaintiffs request that the court stay this action pending decision in Court No. 87–11–01067 in the event that defendant seeks to attack the court's jurisdiction in that action based on the government's position in Court No. 87–11–01066.

*Discussion*

The amended final dumping determination by Commerce did not result in the ITC revising its final injury determination. Therefore, defendants maintain that publication of the amended antidumping duty order has no effect on the court's jurisdiction over the initial action to review the ITC's injury determination. Application of

the holding in *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 507 F.Supp. 1007, *affirmed,* 69 CCPA 61, 669 F.2d 692 (1982), is instructive on whether plaintiffs must commence a new action against the ITC.

> Following the specific ITC injury determination the only legal significance of the final antidumping duty order for plaintiff was as a signal that the time to bring an action for judicial review of the less than fair value and injury determinations was beginning to run. At that point the aggrievement had occurred by reason of the inclusion of plaintiff's product in the final determinations, the final order could not do less than effectuate the final determinations, and the statutory remedy was available to contest "any factual findings or legal conclusions" underlying the determinations. 19 U.S.C. 1516a.

1 CIT at 87–88, 507 F.Supp. at 1014 (footnote omitted).

The action plaintiffs seek to challenge is the affirmative injury finding by the ITC, not the antidumping duty order *per se.* If that order was issued in accordance with the final determination by the agency, it does not represent a new aggrievement. *Id.* at 88, 507 F.Supp. at 1015. In this instance, the revised dumping order did not modify the final determination by the ITC. The issue in *Freeport Minerals* involved the time limits for commencing an action to challenge a subsequent determination by Commerce, where the initial determination postponed action unfavorable to the plaintiff. This court dismissed the action as time barred since it was not filed within 30 days after publication of Commerce's original findings. 7 CIT 65, 583 F.Supp. 586 (1984). The Court of Appeals reversed the dismissal holding that Freeport's claim could be heard since Commerce's original notice was favorable to plaintiff but it was the new determination that created an adverse effect on the plaintiff, entitling it to seek judicial review. 3 Fed.Cir. (T) 114, 758 F.2d 629 (1985).

Examination of 19 U.S.C. § 1516a reveals that Congress authorized the commencement of an action 30 days after publication of an antidumping duty order based upon final affirmative determinations by the administering authority and by the Commission under 19 U.S.C. § 1673d that merchandise the subject of the investigation is being, or is likely to be sold in the United States at less than fair value and that an industry in the United States is materially injured or is threatened with material injury. 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i).

In the case at bar, NTN had filed an action within 30 days after publication of the order based on the original affirmative determinations by Commerce and the ITC. Plaintiffs still seek to challenge the injury determination by the Commission, which was not changed, reconsidered or reissued. Thus, as distinguished from the situation in *Freeport Minerals,* plaintiffs' status to challenge the agency action has not changed.

### Conclusion

In light of the above stated facts, this Court finds that there is no basis for NTN to commence a new action either against Commerce or the ITC. Therefore, defendants' motion to dismiss this action is granted. SO ORDERED.