**MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; Matsushita Electric Corporation of America; Panasonic Hawaii, Inc.; Matsushita Electric of Puerto Rico, Inc.; Victor Company of Japan, Ltd.; and US JVC Corp., Plaintiffs,**

v.

**The UNITED STATES, the DEPARTMENT OF COMMERCE; Malcolm T. Baldridge, Secretary of Commerce; Bruce Smart, Under Secretary of Commerce For International Trade; Paul Freedenberg, Assistant Secretary of Commerce For Trade Administration; Gilbert B. Kaplan, Deputy Assistant Secretary of Commerce for Import Administration, Defendants.**

**Court No. 86–07–00902.**

United States Court of International Trade.

Aug. 12, 1986.

Weil, Gotshal & Manges (A. Paul Victor, Stuart M. Ropen, Philip A. Byler and Debra J. Pearlstein, on the briefs), New York City, for the plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Civil Div., Commercial Litigation Branch (J. Kevin Horgan, on the briefs), Washington, D.C., for the defendant.

## MEMORANDUM OPINION AND ORDER

RAO, Judge:

This civil action is before the Court on plaintiffs' application, brought on by an order to show cause, for a preliminary injunction. Plaintiffs seek to enjoin the Commerce Department (Commerce) from conducting any administrative reviews of T.D. 71–76, the dumping finding covering television receiving sets, monochrome and color, from Japan, as to such merchandise produced by plaintiffs, for periods after August 18, 1983, unless and until it is determined that final revocation of T.D. 71–76 as to plaintiffs is not warranted.

Plaintiffs also seek to require Commerce to conduct and complete administrative reviews under T.D. 71–76 as to their merchandise for the periods April 1, 1981 to March 31, 1982, April 1, 1982 to March 31, 1983 and April 1, 1983 to August 18, 1983 and to require Commerce to employ the "traditional methodology" for determining whether dumping margins exist. Plaintiffs seek to compel Commerce to determine, based on these reviews, whether final revocation of T.D. 71–76 as to plaintiffs is warranted.

Defendants oppose the motion for a preliminary injunction and have moved to dismiss the action for lack of jurisdiction and failure to state a claim upon which relief can be granted, or alternatively, for summary judgment. Defendants also move for a stay of discovery and for a protective order relieving them of the obligation to respond to discovery requests, including a request for documents and notices of depo-

sition for six Commerce Department officials.

It is defendants' position that plaintiffs' motion for a preliminary injunction is not supported by sufficient facts that show that plaintiffs are likely to be immediately and irreparably harmed in the absence of an injunction, that they have not made the requisite showing that they are likely to prevail on the merits of their claim or that the balance of hardships or the public interest favors the grant of the preliminary injunction.

The Court will decide only the question of whether the preliminary injunction should issue, since the Rules of this Court provide for response time for the other pending motions.

## Findings of Facts

T.D. 71–76, promulgated in March, 1971 and later modified by T.D. 75–40, is a dumping finding with respect to television receivers from Japan. On April 28, 1980 plaintiffs entered into a settlement agreement with the United States respecting their potential liability for dumping duties assessed pursuant to T.D. 71–76 on entries of color television receivers imported from Japan through March 31, 1979.

Since that time, the administration of the antidumping laws of the United States devolved to Commerce and Commerce was required by statute to perform annual reviews of antidumping duty orders. Commerce performed two such annual reviews with respect to television sets from Japan and found no dumping of the involved merchandise by Matsushita and only *de minimus* dumping margins with respect to Victor Company of Japan (VCJ). Pursuant to 19 U.S.C. § 1675(c) plaintiffs then applied for a revocation of T.D. 71–76 as to their merchandise, based on the two year, no dumping findings of the first and second annual reviews. Commerce issued a tentative revocation of T.D. 71–76 as to plaintiffs' merchandise on August 18, 1983, published in the Federal Register at 48 Fed. Reg. 37508 (1983). Since that time defendants have made no further determinations with respect to plaintiffs' color television

sets, despite plaintiffs' submissions at a hearing in December, 1983 which plaintiffs allege demonstrated no likelihood of the resumption of sales at less than fair value.

Commerce admits that it has delayed in initiating and completing the annual administrative reviews mandated by the statute and that it has not made any final determinations in its third, fourth, partial fifth, full fifth, sixth or seventh reviews. It does not offer any explanation as to the reason that a final determination respecting plaintiff's application for revocation of T.D. 71–76 has not been made. This despite the language of Commerce's own regulation, 19 C.F.R. 353.54(f) to the effect that "[a]s soon as possible after publication of a 'Notice of Tentative Determination to Revoke or Terminate', the Secretary will determine whether final revocation or termination is warranted ..."

Commerce relies on *Freeport Minerals Co. v. United States*, 776 F.2d 1029 (Fed. Cir.1985) for support of its position that if the data supporting the revocation application have become stale, Commerce may not lawfully revoke an antidumping duty order or finding. Commerce also defends its intended use of a new methodology by explaining that plaintiffs have not been injured by such use since it has not yet been implemented.

Based on the above facts, the Court grants the preliminary injunction to the following extent:

■ [1] The Court preliminarily enjoins defendants from conducting any administrative reviews under T.D. 71–76 as to these plaintiffs until it has made a final determination as to the final revocation of T.D. 71–76 with respect to plaintiffs' products covered by that order. The plaintiffs have demonstrated that they have acted promptly in supplying Commerce with all the data requested and that they have attempted to adhere to pricing formulae which would not put them within the ambit of T.D. 71–76 and which would keep them in compliance with the terms of the settlement agreement. Commerce, in that agreement, provided that it would "promptly revoke or modify T.D. 71–76 as soon as circumstances warrant such revocation or

modification in accordance with procedures set forth in ... applicable regulations ..." Considering that Commerce has given no reason for the delay in making a final determination as to whether to revoke T.D. 71–76 as to plaintiffs' television sets, this Court finds that the plaintiffs would be irreparably harmed by having to comply with Commerce's demands for data and verification of those data for years beyond those involved in the revocation determination decision. The compilation of data and its verification requires an expenditure of effort in both human and other resources for which plaintiffs will not be recompensed should it be found that plaintiffs have not been dumping and that T.D. 71–76 is revoked as to them.

Without deciding the final issues in the case in this preliminary proceeding and considering that defendants have not yet filed their answer to the complaint, it is the opinion of this Court that a prima facie case can be made out on the allegations in the complaint and the affidavits that have been filed in support of plaintiffs' motions. Additionally, defendants have not adduced a reasonable ground for not acting on plaintiffs' application for revocation of the dumping order as to them. See *Chevron Standard Limited and Chevron Chemical Co. v. United States*, 563 F.Supp. 1381, 5 C.I.T. 178 (1983).

If the preliminary injunction does not issue, plaintiffs will be required to provide a large amount of information and verify it for years beyond August 18, 1983, both irrelevant activities if T.D. 71–76 was revoked as to their merchandise. If Commerce is enjoined from including plaintiffs' television imports in any administrative review conducted for years *after* those required for a determination pertaining to revocation of T.D. 71–76 as to plaintiffs and it is later determined that T.D. 71–76 should *not* be revoked as to plaintiffs, it can then determine whether plaintiffs fall within the purview of the dumping order for those years. Whereas plaintiffs would be required to provide a large amount of information and provide for its verification if the preliminary injunction does not issue,

defendants are merely being required to refrain from activity without losing any advantage if the preliminary injunction issues. The balance of hardships thus favors the plaintiffs.

The public interest will also be served if the motion for the preliminary injunction is granted. The public interest is best served when a government agency expends its resources to perform its duties in a timely and expeditious manner, considering only relevant data. If it should be determined that T.D. 71–76 should be revoked as to plaintiffs any additional review which Commerce would make as to entries subsequent to the revocation would be an unwarranted utilization of agency resources.

The Court also decides that, since there can be no change in the information available for entries of plaintiffs' color television sets for the periods April 1, 1981 to March 31, 1982, April 1, 1982 to March 31, 1982 and April 1, 1983 to August 18, 1983, that Commerce cannot logically request new (not "stale") information for those years. Nor can plaintiffs logically be expected to have maintained their records for those years based on Commerce's new accounting procedures. Commerce must examine the information and verify it using accounting procedures that were agreed to during these time periods.

Defendants motion to dissolve the temporary restraining order is denied as mooted by this Order.

The Court reserves all other matters and motions now pending in this case.